IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KATHLEEN H.,[1]

      Plaintiff,

vs.

ANDREW M. SAUL,
Commissioner of
Social Security,

      Defendant.

Case No. 3:19-cv-00189-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

Plaintiff Kathleen H. seeks judicial review of the final decision of the
Commissioner of Social Security ("Commissioner") denying her claim for Disability
Insurance Benefits.   This Court has jurisdiction under 42 U.S.C. §§ 405(g) and

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party or parties in this case. When applicable, this opinion uses the
same designation for the non-governmental party's immediate family member.

1383(c).  For the reasons below, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

## BACKGROUND

On June 8, 2017, plaintiff applied for Disability Insurance Benefits.  Tr. 15.[2] She alleged disability beginning March 11, 2016, due to posttraumatic migraines, cognitive disorder, posttraumatic stress disorder (PTSD), major depression, anxiety, borderline personality disorder, obesity, and various musculoskeletal issues, including knee, back, and shoulder problems.  Tr. 18.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 15.  On July 18, 2018, plaintiff appeared at a hearing before an administrative law judge ("ALJ").  *Id.*  On August 31, 2018, the ALJ issued a decision finding plaintiff not disabled.  Tr, 29.  After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted).  The court must weigh "both the evidence

---

[2] Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the decision must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## THE ALJ'S FINDINGS

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four, and with the Commissioner at step five. *Id.; Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here, the ALJ found that plaintiff was not disabled. The ALJ first determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. Tr. 17. At step one, the ALJ found that plaintiff had not performed substantial gainful activity since March 11, 2016, her alleged onset date.

*Id.* At step two, the ALJ found that plaintiff had the following severe impairments: obesity; PTSD; generalized anxiety disorder; mild neurocognitive disorder; major depressive disorder; borderline personality disorder; left shoulder tendinitis; bilateral knee strain; mild degenerative disc disease of the lumbar spine; and headaches. Tr. 18. At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18-20.

Before proceeding the step four, the ALJ determined that plaintiff's RFC allowed her to perform light work with these limitations:

> [Plaintiff] can frequently climb ramps and stairs, but never ropes, ladders, or scaffolds; she can occasionally stoop, crouch, crawl, kneel, and balance; she can do simple, routine tasks with no public contact and occasional contact with a small group of co-workers; she should avoid concentrated exposure to hazards, noise above a moderate level, and lighting above a moderate level.

Tr. 20.

At step four, the ALJ found that plaintiff could not perform any of her past relevant work. Tr. 28. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could sustain substantial gainful employment despite her impairments. *Id.* Specifically, the ALJ found that plaintiff could perform the representative occupations of electrical accessories assembler, routing clerk, and tumbler tender. Tr. 29. As a result, the ALJ concluded that plaintiff was not disabled under the Act.

**DISCUSSION**

Plaintiff contends that the ALJ erred by discounting the opinions of her healthcare providers, Deborah Syna, MD, and Tim DiCarlo, MD, and Robert Rouse, MSW, LCSW, as well as improperly rejecting the VA's disability rating and plaintiff's subjective symptom testimony. As a result of these alleged errors, plaintiff also argues the ALJ committed reversible legal error at steps three and five. Plaintiff asserts that this case should be remanded for the immediate calculation of benefits because "when the improperly rejected evidence is considered…[plaintiff] is determined disabled." Pl.'s Br. 20 (doc. 11).

The Commissioner concedes reversible legal error, but only with respect to the ALJ's treatment of Dr. Syna's and Dr. DiCarlo's opinions. Resp. Br. 4 (doc. 12). The Commissioner argues that further proceedings are warranted to due uncertainties in the record regarding the frequency and severity of plaintiff's headaches and inconsistent statements made by plaintiff. *Id.* at 3-4.

Although reviewing courts generally remand to the agency for "additional investigation or explanation," *Florida Power & Light Co. v. Lorio*, 470 U.S. 729, 744 (1985); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1044 (9th Cir. 2007) (the ordinary remand rule applies to Social Security cases), Congress has granted courts some additional flexibility in § 405(g) "to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.

*Id.* at 1178. The issue turns on the utility of further proceedings. A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014).

## I.    *Assignments of Error*

To determine which type of remand is appropriate, this Court must first consider whether the ALJ provided legally sufficient reasons for rejecting evidence presented by plaintiff.

### A.    *Dr. Syna's and Dr. DiCarlo's Medical Opinions*

First, as the Commissioner concedes, the ALJ erred in rejecting the opinions of Drs. Syna and DiCarlo by summarily discounting them as statements on issues "reserved to the Commissioner." Tr. 26-27. Dr. Syna's June 2016 Disability Benefits Questionnaire noted that plaintiff experienced prostrating headaches twice a month that would interfere with work 1-2 days per month. Tr. 432. Dr. DiCarlo's September 2017 Questionnaire concluded that plaintiff's impairments would not impact her ability to work, although he did anticipate absenteeism as a result of plaintiff's prostrating headaches. Tr. 731.

The ALJ's rejection of these opinions was not harmless error. Had the ALJ credited the medical opinions at step three or step five, the ALJ would have found that plaintiff was disabled under the Act.

Plaintiff contends that the ALJ improperly concluded that plaintiff's migraines did not meet or medically equal Listing 11.02 (Epilepsy) at step three. While migraines alone are not a listed impairment, the SSA identifies 11.02 (Epilepsy) as the most closely analogous to primary headache disorders—which include migraines—and may, alone or in combination with another impairment, medically equal a listing. SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders. The SSA's policy interpretation SSR 19-4p provides ALJ's with instructions to determine whether a claimant's migraines are equal in severity and duration to the criteria in 11.02B or D:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an [acceptable medicals source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)…
>
> . . . . .

Paragraph D of listing 11.02 requires dyscognitive seizures occurring at
least once every 2 weeks for at least 3 consecutive months despite
adherence to prescribed treatment, and marked limitation in one area
of functioning. To evaluate whether a primary headache disorder is
equal in severity and duration to the criteria in 11.02D, we consider the
same factors we consider for 11.02B and we also consider whether the
overall effects of the primary headache disorder on functioning results
in marked limitation in: physical functioning; understanding,
remembering, or applying information; interacting with others;
concentrating, persisting, or maintaining pace; or adapting or managing
oneself.

*Id.*

The opinions of Drs. Syna and DiCarlo address plaintiff's history of migraines,

including duration, frequency, treatment, associated phenomena, treatment, effects

of treatment, and resulting limitations.  Tr. 426, 429-432, 726, 729-731.  Because the

opinions of the doctors provided evidence establishing plaintiff equaled a Listing of

11.02, had Drs. Syna and DiCarlo's opinions been properly considered, the ALJ would

have found that plaintiff was disabled under the Act.

Plaintiff also argues that because the ALJ improperly rejected Drs. Syna and

DiCarlo's opinion, the ALJ erred at step five by failing to present the VE with a

complete hypothetical.  The ALJ must include all of the limitations which are

supported by substantial medical evidence in the record (including pain), and which

the ALJ has explicitly "accepted," usually as set forth in the RFC.  *Cooper v. Sullivan*,

880 F.2d 1152, 1158 n.13 (9th Cir. 1989); *see also Stubbs-Danielson v. Astrue*, 539

F.3d 1169, 1174 (9th Cir. 2008).  Here, the ALJ's hypotheticals did include all the

limitations which she had explicitly accepted in the RFC.  However, because the ALJ

improperly rejected Drs. Syna and DiCarlo's opinion, it is not apparent whether all

of plaintiff's limitations were included in the dispositive hypothetical question, and therefore, it is not clear whether the VE's answers have evidentiary value. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)); *Magallanes v. Bowen*, 881 F.3d 747, 757 (9th Cir. 1989); accord *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  At the same time, the VE did provide testimony suggesting that the ALJ would have found that plaintiff was disabled had the ALJ adopted Dr. Syna's or Dr. DiCarlo's opinion.  At the hearing, in response to a question posed by plaintiff's counsel, the VE testified that competitive labor market tolerates no more than 1.5 absences per month for unskilled jobs like the representative jobs on which the ALJ's decision relies in this case.  *See* Tr. 27.

Plaintiff next argues that the ALJ erred in rejecting plaintiff's VA disability determination.  During the relevant time period, the VA rated plaintiff 90-100 percent disabled due to PTSD (50%) and a variety of physical impairments. Tr. 242, 327.  The ALJ noted that the VA gave plaintiff a disability rating but declined to "provide any analysis of the VA's rating," quoting and citing 20 CFR 404.1504.  Tr. 27.  The ALJ asserted, however, that she had "considered all the medical evidence received from the VA" as required by SSA regulations. Tr. 28.

The ALJ correctly described the requirements of the new regulations, which apply to applications filed on or after March 27, 2017.  As the ALJ noted, the regulations do not require ALJs to "provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernment entity about whether [claimants] are disabled, blind, employable, or

entitled to any benefits." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, ALJs are not required to assign "any specific evidentiary weight, including controlling weight, to … prior administrative medical finding(s)." *Id*. Instead, the ALJ must consider "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that received as evidence for a disability claim." *Id*.

Here, the ALJ did consider most of the evidence supporting the VA's determination. Tr. 24-27. However, the ALJ insufficiently considered the evidence supporting plaintiff's VA disability rating due to her improper rejection of Dr. Syna and Dr. DiCarlo's opinions. Both doctors' medical opinions informed plaintiff's VA disability rating, but the ALJ rejected these opinions by concluding that they involved issues reserved to the Commissioner. As discussed above, and as both parties agree, the ALJ erred in this respect. Such a cursory dismissal of medical opinions cannot suffice as proper consideration all of the supporting evidence underlying the VA's decision.

Although plaintiff acknowledges that the new regulations apply to her claim and did not require the ALJ to analyze her VA disability rating, plaintiff argues that "there is no indication that" the ALJ actually considered all the supporting evidence. Pl.'s Br. 20 (doc. 11). Plaintiff relies on *McCartey v. Massanari,* in which the Ninth Circuit ordered remand for payment of benefits where the VA's 80% disability determination was supported by several hundred pages of medical records. *See, e.g.,* 298 F.3d 1072, 1076 (9th Cir. 2002). As in *McCartey*, plaintiff contends that when

the evidence underlying the VA's decision in her case is properly considered, the ALJ would find she is unable to maintain regular, continuous employment, warranting remand for payment of benefits.  Pl.'s Br. 9 (doc. 11).  Plaintiff also quotes the Ninth Circuit's reasoning in *McCartey* that explained an ALJ must ordinarily give great weight to a VA determination of disability because of the similarities between the VA and the SSA's disability programs.  Pl.'s Br. 8-9 (doc. 11).

    *McCartey* was decided before the new regulations took effect, but plaintiff argues that *McCartey* is still "established law in the Ninth Circuit."  Pl.'s Br. 20 (doc. 11).  Insofar as plaintiff relies on *McCartey* for the proposition that an ALJ "must ordinarily give great weight to a VA determination of disability," *McCartey* is not established law in the Ninth Circuit.  *See Edward L. C. v. Comm'r of Soc. Sec.,*  No. C19-5208-MLP, 2019 WL 6789813, at *2 (W.D. Wash. Dec. 12, 2019) ("The Court declines to adopt Plaintiff's interpretation and instead finds the ALJ is no longer required to assign weight to VA disability determinations."; *Kathleen S. v. Comm'r Soc. Sec. Admin.*, C19-5167 (W.D. Wa. Oct. 2, 2019).

    Plaintiff also seems to argue that *McCartey* created a rule that when the VA determines a claimant's disability rating is high enough to preclude competitive employment and is "supported by several hundred pages of medical records," the Commissioner should also find that the claimant is disabled.  *Id. McCartey*, however, does not stand for this broad proposition.  Instead, the Ninth Circuit acknowledged that an ALJ may "give less weight to a VA disability rating if [s]he gives persuasive, specific, valid reasons for doing so that are supported by the record."  *McCartey,* 298

F.3d at 1076. This is consistent with the new regulations in that it directs the analysis away from an agency's rating and toward the underlying evidence. *See Diaz v. Comm'r of Soc. Sec.*, No. 2:19-CV-537-KJN, 2020 WL 2732027, *3 (E.D. Cal. May 26, 2020) (holding that the new Social Security Administration's regulations do not fully displace the requirements announced in *McCartey*). Therefore, while the new regulations may not fully displace all the requirements announced in *McCartey*, nothing in *McCartey* or the new regulations suggest that hundred pages of medical records supporting the VA's determination of disability require a finding of disability by the Commissioner without any weighing of the evidence contained in those records.

**B.    *Mr. Rouse's Medical Opinions***

By contrast, the ALJ did not commit reversible error in rejecting the medical opinions of Mr. Rouse, plaintiff's treating mental healthcare provider. Because plaintiff filed her claim after March 27, 2017, the SSA's new regulations regarding evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). Under these regulations, the ALJ must articulate and explain the persuasiveness of an opinion based on "supportability" and "consistency," the two most important factors in the evaluation. *Id.* at (a), (b)(1)-(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id.* at (c)(1)-(2).

In July 2018, Mr. Rouse provided a medical source statement in which he indicated that the plaintiff had marked limits in her ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 1076. Mr. Rouse also found that plaintiff would need to take unscheduled breaks and believed she would miss 16 hours or more per month due to her symptoms and impairments. Tr. 1078. The ALJ rejected Mr. Rouse's opinion as "unpersuasive." Tr. 26.

In doing so, the ALJ reasoned that, unlike the medical opinions of other credited providers, "Mr. Rouse is not familiar with Social Security Rules and he did not have the opportunity to review the longitudinal evidence record." Tr. 26. While this reason alone is not enough to warrant discrediting Mr. Rouse's opinion, the SSA's new regulations provide that "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements" is a factor to be weighed by an ALJ when considering medical opinions. 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

The ALJ also reasoned that Mr. Rouse opined on issues reserved to the Commissioner by concluding that plaintiff "seemed quite disabled" and that plaintiff was unable to perform work on a regular or consistent basis. Tr. 26. The ALJ

correctly concluded that Mr. Rouse's opinion that plaintiff seemed "quite disabled" are "statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work," as defined by 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3), and therefore not a medical opinion, and not valuable or persuasive. However, in rejecting some of Mr. Rouse's other statements as statements that plaintiff was unable to perform work on a regular or consistent basis, the ALJ committed the same error she committed in rejecting Drs. Syna's and DiCarlo's opinions. Mr. Rouse did not simply state that plaintiff is unable to perform work on a regular or consistent basis, but instead, opined that she "would need unscheduled breaks, and . . . would miss 16 hours or more per month due to her symptoms[.]" Tr. 26. Mr. Rouse's opinion did not concern the ultimate issue of disability, but instead opined on plaintiff's work-related restrictions. This is legal error.

Despite this error, the ALJ presented other clear and convincing reasons for rejecting Mr. Rouse's opinion—inconsistencies between his opinion and VA records and plaintiff's daily activities. The ALJ observed that the VA treatment notes showed normal mental status exams and that the plaintiff's symptoms were manageable with medication. Tr. 26. Additionally, the ALJ found that Mr. Rouse's opinion was undermined by plaintiff's ability to advocate for herself and her children by acquiring housing and working to resolve child support and custody issues. *Id.*

Plaintiff argues, however, that the medical record contradicts the ALJ's finding that plaintiff's mental health status was normal and therefore the ALJ's finding is not supported by substantial evidence. Plaintiff points to evidence in the record that

suggests limitations consistent with those identified by Mr. Rouse, including plaintiff's difficulty managing tasks, tendency to become overwhelmed, memory deficits, anger, irritability, and tearfulness. Pl.'s Br. 13 (doc. 11). However, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). Here, the ALJ's decision to weigh the VA's medical record over that of other conflicting evidence is entitled to deference.

Therefore, the ALJ gave reasons supported by substantial evidence in the record to reject Mr. Rouse's conclusions as to plaintiff's conditions and the effect of those conditions on her ability to engage in gainful employment. The ALJ did not err in this determination. Because the ALJ properly rejected Mr. Rouse's opinions, she did not err, as plaintiff contends, by failing to consider his opinions at step three or by failing to incorporate the opinions into a VE hypothetical at step five.

### C. *Plaintiff's Symptom Testimony*

Finally, the ALJ erred in some of her treatment of plaintiff's subjective symptom testimony. But, as explained below, that error was harmless. Plaintiff testified that she was precluded from all work activity due to prostrating headaches each week, which require her to lay down until they resolve, mental health and

memory difficulties, and knee swelling two to three times per month.  Tr. 51-54.  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, she did not find plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 21.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

First, the ALJ reasoned that plaintiff's statements about her symptoms are "inconsistent with her daily activities."  *Id*.  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain."  *Garrison,* 759 F.3d at 1016.  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for

benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen,* 80 F.3d at 1287 n. 7. As such, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Garrison,* 759 F.3d at 1016.

Here, the ALJ did not meet the clear and convincing standard for rejecting plaintiff testimony. The ALJ found plaintiff's allegation that she is precluded from all work activity inconsistent with plaintiff's ability to paint and unpack after moving to a new apartment, advocate for herself and her children by obtaining housing assistance, child support, custody, and healthcare benefits, and her capacity to drive, perform childcare, go shopping, volunteer at church, and attend parenting classes. *Id.* However, plaintiff's daily activities, as she described them in her testimony, were consistent with her statements about the impairments caused by her pain. Plaintiff testified that, although her mother takes care of her children more than half the time, plaintiff performs childcare, including taking them to school and shopping for them, and that she is able to drive occasionally and attend appointments but needs help remembering to do so. Tr. 167-172. These activities indicate some functional ability, however, the ALJ failed to identify how they are transferable to a work environment. Therefore, the ALJ erred in discounting plaintiff's testimony as inconsistent with her daily activities.

Second, the ALJ reasoned that plaintiff's testimony regarding her work activity was inconsistent with prior statements. *Id.* In support of that conclusion,

Page 17 – OPINION AND ORDER

the ALJ cited a March 2016 medical report, wherein plaintiff told a medical provider that she worked as a home health care provider for her uncle and for one other client and described herself as "the breadwinner" in her family. *Id.* Additionally, plaintiff reported in December 2017, that she was working on getting employment. *Id.* In assessing credibility, an ALJ may consider a range of factors, including prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that seeking out employment may undermine claims of disability). The ALJ therefore reasonably relied on these inconsistencies to discredit plaintiff's testimony.

Third, the ALJ reasoned that plaintiff's symptom testimony was inconsistent with the objective medical record. Tr. 21-22. The ALJ concluded that medical records describing plaintiff's musculoskeletal problems, obesity, headaches, and mental impairments, did not substantiate the level of debilitation plaintiff alleged. For instance, the ALJ noted that imaging of the claimant's lumbar spine revealed mild findings, physical examinations repeatedly showed no significant objective abnormalities, muscle strength testing for both her upper and lower extremities demonstrated limited range of motion, but otherwise full strength, no muscle atrophy, and no history of lateral instability. Tr. 22. The ALJ also noted that in November 2016, plaintiff presented to the emergency complaining of headache, nausea, vomiting, and dizziness, but nevertheless had a "completely normal

neurologic exam." *Id.* As to plaintiff's mental impairments, the ALJ concluded that plaintiff's psychological impairments were inconsistent with medical evidence, such as mental health examination results that were generally unremarkable and improved symptoms with medication. Tr. 23. The ALJ reasonably relied on these inconsistencies between plaintiff's testimony and the objective medical record to discredit plaintiff's testimony concerning the symptoms of her physical and mental impairments.

Finally, the ALJ reasoned that plaintiff conservative course of treatment undermined her testimony about her migraine headaches. Tr. 22. The ALJ noted that plaintiff takes no medications for her migraine headaches, failed to attend various medical appointments, and refused to enroll in a weight loss program. Tr. 22. An "unexplained, or inadequately explained, failure to seek treatment may be the basis for" rejecting a claimant's subjective symptom testimony "unless one of a number of good reasons for not doing so applies." *Orn*, 495 F.3d at 638 (internal quotation marks omitted).

Here, plaintiff offered "good reasons" for her conservative treatment and noncompliance with treatment. First, plaintiff explained in her hearing that she had experienced poor reactions to the migraine medications she had been prescribed, including dizziness, nausea, and vomiting. Tr. 52. Although, as discussed below, there is ambiguity as to the actual effects of these medications on plaintiff, evidence exists in the record that supports this claim. Tr. 384. Further, even if plaintiff's reason for noncompliance with treatment plans due to poor reactions to medication

Page 19 – OPINION AND ORDER

is undermined by inconsistencies in the record, plaintiff also explained that her impairments caused forgetfulness and confusion, which reasonably explains her numerous missed appointments. Tr. 993. "[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn*, 495 F.3d at 638). Because of these connections to plaintiff's impairments, her failure to pursue recommended treatment and attend all appointments is not a convincing reason to disbelieve her symptom testimony. *See Garrison* 759 F.3d at 1018 n.24 (stating that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation").

An ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting a claimant's testimony are upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error ...[,] it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle,* 533 F.3d at 1162. The inconsistency between plaintiff's testimony and the medical evidence and prior statements concerning her ability to work are all clear and convincing reasons, supported by substantial evidence, to justify the ALJ's decision to reject plaintiff's testimony. Accordingly, the ALJ's improper reliance on plaintiff's conservative treatment, noncompliance with treatment for migraine

headaches, and inconsistencies with her daily activities as reasons to discredit her symptom testimony was harmless. Because the ALJ properly rejected plaintiff's symptom testimony, she did not err, as plaintiff contends, by failing to the testimony at step three or by failing to incorporate the opinions into a VE hypothetical at step five.

## II.    *Type of Remand*

As discussed above, the ALJ committed reversible error by improperly discrediting the opinions of Drs. Syna and DiCarlo. Further proceedings would nonetheless be useful in this case because the record is ambiguous regarding the ways that plaintiff's headaches impact her functional abilities.

First, further proceedings would be beneficial to determine the intensity and frequency of plaintiff's headaches. In July 2018, plaintiff testified that she experienced an increase in intensity and frequency of prostrating headaches after a fall and concussion in March 2016. Tr. 55. This assertion is not clearly supported in the record. In fact, evidence exists that plaintiff reported fewer headaches after her fall. On September 7, 2017, Dr. DiCarlo noted that plaintiff claimed to have one prostrating headache per month, but she reported only experiencing five to date in 2017. However, in a medical evaluation on July 20, 2014, two years before plaintiff's fall and concussion, Dr. Carolyn Hughes noted plaintiff experienced prostrating headaches once per month. Tr. 600. Ten months later, however, notes from a visit with Dr. Erica Grogan state plaintiff reported she had not experienced a migraine for two years. Tr. 487. These inconsistencies present material ambiguity in the record

since the number of prostrating headaches plaintiff experiences each month and their increase relative to her 2016 fall, bears directly on the issue of absenteeism and plaintiff's ability to maintain competitive employment. Therefore, further development of this issue with further proceedings would be beneficial.

Additionally, further proceedings are warranted establish what medications plaintiff was taking for her migraines, and the effectiveness of those medications in managing her migraines. During the 2018 oral hearing before the ALJ, plaintiff testified that the migraine medication given to her after leaving the military worsened her symptoms, caused her to feel nauseous, and induced vomiting. Tr. 52. As a result, plaintiff reported she had not taken medication for migraines in the past five years. *Id*. These statements are inconsistent with other evidence in the record, such as the numerous medical reports between November 2015, and June 2016, including those of Drs. Syna and DiCarlo, that note plaintiff was continuously prescribed Sumatriptan Succinate for migraine headaches. Tr. 437, 450, 459, 464, 473, 884, 891, 895, 897, 902. During a visit with Dr. Grogan in 2015, the doctor's notes report plaintiff was on Sumatriptan for migraines, that plaintiff claimed it was "helpful", and that plaintiff requested a refill. Tr. 487. These inconsistencies indicate the need for further proceedings to resolve essential factual issues regarding the effects of plaintiff's migraines on her ability to maintain competitive employment.

Because the issues of severity and frequency of plaintiff's migraines, as well as the effectiveness of medication in controlling plaintiff's migraines, are material to the determination of disability, I conclude remand for further proceedings is appropriate.

Page 22 – OPINION AND ORDER

## CONCLUSION

The Commissioner's decision is REVERSED, and this case is REMANDED for

further proceedings.

IT IS SO ORDERED.

Dated this  25th  day of August 2020.


_____/s/Ann Aiken_____

Ann Aiken
United States District Judge